OPINION
{¶ 1} Plaintiffs-appellants, Michael A. Tackett, Kim Tackett, Norm Chenoweth and Tisha Chenoweth, appeal from three judgments of the Franklin County Court of Common Pleas granting summary judgment for defendants-appellees, Gas Energy, Inc. ("Gas Energy"), Schooley Caldwell and Associates, Inc. ("Schooley Caldwell"), and Limbach Company ("Limbach"). This case arises out of injuries suffered by appellants, Michael A. Tackett ("Tackett") and Norm Chenoweth ("Chenoweth") during the course of their employment with Carrier Corporation, a contractor performing maintenance and repair to HVAC equipment on the premises of a Columbia Energy Group Service Corporation building in Columbus, Ohio. Chenoweth was a service technician for Carrier, whose duties included servicing, repairing and maintaining commercial HVAC equipment. Tackett was a supervisor and former service technician.
 {¶ 2} The two men were injured on June 14, 1998, while working on a device known as a "chiller," a large air conditioning unit that produces cool air in commercial buildings by heating and evaporating a solution of lithium bromide and water. This solution, under normal operation, is heated to over 300 degrees Fahrenheit, and under pressure. Tackett and Chenoweth were working on the chiller when the lithium bromide solution overheated and violently discharged through a pressure release mechanism known as a "rupture disk." The discharge from the rupture disk was led through a discharge pipe installed for that purpose, downward and terminating a short distance above the concrete floor. The solution initially splattered off the floor and onto the feet and ankles of Tackett and Chenoweth; before the pressure release was completed, however, the discharge piping separated from its attachment point at the rupture disk, allowing more solution to then spray from above onto Tackett and Chenoweth, causing burns to their shoulders, back and arms.
 {¶ 3} Subsequent investigation disclosed that the discharge pipe installation did not conform with the supplier's instructions in at least two respects: the pipe did not terminate over an open floor drain to carry off any discharge, and the pipe itself consisted of PVC, rather than CPVC, plastic as specified in an installation manual. Appellants' expert would later opine that, although both types of plastic were inadequate for the fluid temperature in an operating chiller, CPVC generally has a higher temperature rating than PVC.
 {¶ 4} The malfunctioning chiller was manufactured by Hitachi, which is not a party to this action, and sold by Gas Energy. Schooley Caldwell is an engineering and architectural firm which had prepared specifications and drawings for a renovation of the building that included replacement of the entire HVAC system, including installation of the new Hitachi chillers. Another defendant, Henry A. Justice, Inc. ("Justice"), which was dismissed in the trial court and is not a party to this appeal, served as the general contractor for the assembly and installation of the chiller, and subcontracted the chiller installation to Limbach.
 {¶ 5} Tackett, Chenoweth and their spouses initiated this action with a complaint bringing claims for negligence and product liability under R.C. 2307.71 et seq. The complaint originally named seven defendants, four of whom, including Justice, have been voluntarily dismissed. The trial court granted summary judgment for Schooley Caldwell by decision and entry on August 16, 2002, denying at that time similar motions by Gas Energy and Limbach. The latter two filed motions for reconsideration, which were granted by the court, resulting in summary judgment in favor of Gas Energy and Limbach reflected in separate judgments entered on November 14, 2002.
 {¶ 6} Appellants have timely appealed and bring the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
The Common Pleas Court erred to the prejudice of Plaintiff-Appellant in granting summary judgment in favor of Schooley Caldwell Associates, Inc.
ASSIGNMENT OF ERROR NO. 2
The Common Pleas Court erred to the prejudice of Plaintiff-Appellant in granting summary judgment in favor of Defendant-Appellee Limbach Company.
ASSIGNMENT OF ERROR NO. 3
The Common Pleas Court erred to the prejudice of Plaintiff-Appellant in granting summary judgment in favor of Defendant-Appellee Gas Energy, Inc.
 {¶ 7} Initially, we note that Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. MidwesternIndemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support his or her claims. Id.
 {¶ 8} An appellate court's review of summary judgment is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579,588;Bard v. Society Natl. Bank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v.Shelly Co. (1995), 106 Ohio App.3d 440,445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard.
 {¶ 9} We will accordingly examine the evidence presented in the case with respect to each appellee's summary judgment motion to determine whether summary judgment was appropriate. In addition, it must be noted that, because the interests of the appellees are not always aligned and cross-claims have been made in this case, the totality of the evidence presented in the case must be considered with respect to each appellee.
 {¶ 10} Appellants' first assignment of error asserts that the trial court erred in granting summary judgment in favor of Schooley Caldwell, against whom appellants had asserted a claim for negligence in preparation of the plans relating to installation of the chiller. Specifically, appellants assert that Schooley Caldwell was negligent in failing to specify that a splash guard should be placed around the discharge piping to protect persons nearby in the event of a rupture disk split, and by failing to recognize that the manufacturer's installation instructions recommended the use of inadequate plastic piping for the discharge line.
 {¶ 11} In pursuing a negligence claim in Ohio, a plaintiff must establish the existence of a duty on the part of the defendant, a breach of that duty, and injury to the plaintiff proximately caused by such breach. Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75. A duty owed by the defendant to the plaintiff is thus fundamental in establishing actionable negligence. Jeffers v. Olexo (1989),43 Ohio St.3d 140, 142. In order to defeat a properly supported motion for summary judgment, therefore, the plaintiff must come forward with sufficient evidence of a genuine issue of material fact on the questions of whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries. The initial question of whether defendant owed a duty of care to the plaintiff, however, is a question of law. Mussivand v. David
(1989), 45 Ohio St.3d 314, 318.
 {¶ 12} Schooley Caldwell argues in this case that the duty of care incumbent on it is defined by the architectural and design services contract between Schooley Caldwell and the building owner. That contract specifically assigns responsibility for design and installation of the chiller to the building owner and its contractor, and specifies that the installation should be undertaken in accordance with the manufacturer's instructions under the direct supervision of Gas Energy:
PART 3 EXECUTION
3.01 INSTALLATION
A. Install chillers in accordance with manufacturers installation instructions.
B. Install chillers plumb and level, firmly anchored, and maintain manufacturer's recommended clearances for servicing and maintenance.
C. Install vibration isolators to concrete pad with anchor bolts and secure chiller to vibration isolators.
3.02 PIPING CONNECTIONS
A. Piping installation requirements are specified in other sections of Division 15. The Drawings indicate the general arrangement of piping, fittings, and specialties. The following are specific connection requirements:
* * *
4. Vent Piping: Provide drain piping as indicated to suitable drain.
 {¶ 13} Appended to the contract is a section of the service manual for the chiller, apparently prepared and furnished by Gas Energy. This contains specifications and drawings for installation of the rupture disk and discharge piping. The drawing indicates the rupture disk discharge piping descending vertically to terminate 10 to 12 inches above a floor drain, accompanied by the following written specifications:
PIPING PREPARATION
1. Prepare matching flange, discharge piping and support to be installed later under G.E.I. [Gas Energy, Inc.] supervision. Approximate diameter of rupture disk including gaskets is 1 1/8". Discharge piping must be CPVC. DO NOT USE STEEL.
2. Discharge piping to be terminated 10" to 12" above a suitable drain (Fig. 4-9).
 {¶ 14} Schooley Caldwell argues that the contract between Schooley Caldwell and the building owner specifically assigns all responsibility for design and installation of the chiller to the building owner and its installation contractor, and that this contractual allocation of responsibility for design and installation is an absolute shield against liability on the part of Schooley Caldwell. For this proposition, Schooley Caldwell cites Nicholson v. Turner/Cargile (1995), 107 Ohio App.3d 797, a decision of this court in which we found that an architect could not be held liable for unsafe job site conditions created by construction means and techniques selected by the contractor, where the architect's contract required on-site inspection solely for the purpose of insuring that the construction met with the architect's design specifications. We found that, under these circumstances, the architect "did not have a contractual duty to make the construction site safe for the general construction workers." Nicholson, at 803. While the contract may define certain aspects of Schooley Caldwell's liability to other contracting parties, it does not exclusively define the scope of the architect's liability to others.
 {¶ 15} "`Generally, one who contracted in a specialized professional capacity to provide the design for a particular structure may be held to respond in damages for the foreseeable consequences of a failure to exercise reasonable care in the preparation of the design.'" Campbell v. The Daimler Group,Inc. (1996), 115 Ohio App.3d 783, 789, quoting CincinnatiRiverfront Coliseum, Inc. v. McNulty Co. (1986),28 Ohio St.3d 333, 337.
 {¶ 16} On the present facts, we find that Schooley Caldwell did not "[contract] in a specialized professional capacity" to provide the design specifications for installation of the chiller, merely by specifying that the specific instructions for this process provided by the equipment seller should be followed and incorporating those specifications by reference. The contract provisions provided that the chiller installation would be undertaken by the building owner and its designated contractor, and that, in doing so, the specifications set forth in the chiller manufacturer or provider's manual should be followed. In the absence of any evidence that such reliance by Schooley Caldwell on the manufacturer for proper specifications was, itself, negligent, Schooley Caldwell would not be liable. In this instance, appellants have presented no evidence that the standard of care for an architect involves review and potential correction of installation specifications for specialized equipment such as the Hitachi chiller. As a matter of law, therefore, we find that Schooley Caldwell did not retain a duty of care that was breached in the present case.
 {¶ 17} We accordingly find that the trial court did not err in granting summary judgment for Schooley Caldwell because appellants have not established, as a matter of law, a duty on the part of Schooley Caldwell to correct the alleged defects in the discharge piping specifications provided by Hitachi or Gas Energy. Appellants' first assignment of error is accordingly overruled.
 {¶ 18} Appellants' second assignment of error asserts that the trial court erred in granting summary judgment in favor of Limbach, the subcontractor to Justice for installation of the chiller. Appellants' claims against Limbach are based both upon product liability under R.C. 2307.71 et seq., and common-law negligence. We will first examine the negligence claim.
 {¶ 19} Factually, Limbach asserts that, although it installed the chiller according to manufacturer specifications provided by Gas Energy, Limbach had nothing to do with installation of the discharge piping. By deposition testimony of its employees, Limbach seeks to establish that it never received any diagram showing that discharge piping was to be installed or drawings referencing the discharge piping. The affidavit of Billie Rhodes, foreman on the chiller installation project, sets forth that neither the rupture disk nor the discharge piping had been installed on the chiller when Limbach completed its assigned work and left the project. No Limbach employee, to Rhodes' knowledge, returned to install either the rupture disk or the discharge piping. The deposition of Gerald Zoladz, a contract manager who had ultimate responsibility over the chiller installation for Limbach, stated that Limbach was not furnished the manufacturer's installation manual to install the chiller, and this manual was not part of the contract document entered into by Limbach. Limbach asserts that this evidence establishes that it neither performed the rupture disk discharge piping installation, directed another to perform it, nor was obligated to perform it under its contract.
 {¶ 20} Appellants do not present any evidence that Limbach in fact did install the discharge piping, but, rather, argue that even if Limbach did not install the discharge piping, the failure to do so, of itself, breaches a duty of care to do so and a contractual obligation set forth in the architectural specifications to do so properly.
 {¶ 21} In seeking to establish a contractual obligation to install the discharge piping, appellants, however, point not to any contract between Limbach and Justice, but to the contract specifications provided by the architect. This does not establish the contractual division of installation work on the chiller between Limbach and any other entities that may have participated in the installation. (The inference in Limbach's brief is that Mechanical Services, Inc., one of the other defendants voluntarily dismissed prior to final judgment in this case, was the actual installer of the rupture disk discharge piping, and did so under the direction of Gas Energy personnel.)
 {¶ 22} Because appellants have failed to rebut the direct evidence presented by Limbach in support of summary judgment that it neither installed the discharge piping nor was responsible for such an installation and, in fact, had left the job site before installation took place and before the rupture disks themselves were even delivered for installation, there remains no genuine issue of material fact on the elements of the common-law negligence claim against Limbach, and the trial court did not err in granting summary judgment for Limbach on this claim.
 {¶ 23} Appellants' complaint also brought a product liability claim against Limbach as a supplier of a defective product liable under R.C. 2307.78(A)(1). Appellants' brief on appeal presents no argument on this aspect of their claims against Limbach, and the facts that preclude recovery on Limbach's common-law negligence claim preclude recovery under this statutory claim as well.
 {¶ 24} We accordingly find that the trial court did not err in granting summary judgment in favor of Limbach on appellants' product liability and negligence claims, and appellants' second assignment of error is overruled.
 {¶ 25} Appellants' third assignment of error asserts that the trial court erred in granting summary judgment in favor of Gas Energy on appellants' product liability claim under R.C.2307.78(A)(1). This section provides, in pertinent part, as follows:
(A) Subject to division (B) of this section, a supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, that either of the following applies:
(1) The supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages[.]
 {¶ 26} "Supplier" is defined by R.C. 2307.71(O):
(O)(1) "Supplier" means, subject to division (O)(2) of this section, either of the following:
(a) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;
(b) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.
 {¶ 27} Appellants argue that the installation manual admittedly prepared by Gas Energy failed to provide appropriate safety measures because it did not call for a splash guard around the discharge piping. Additionally, appellants argue that the manual calls for the use of CPVC piping that was inadequate to withstand the heat of the discharge fluid. Lastly, appellants refer to the notation in the installation manual that calls for the flange, discharge piping, and any necessary supports to be installed "under the supervision of" Gas Energy, alleging that the supervision either did not take place or was negligently done.
 {¶ 28} Gas Energy's sole response to the question of the existence of a splash guard is that there is insufficient evidence that the absence of the splash guard was the proximate cause of injuries suffered by Tackett and Chenoweth. Appellants' expert, professional engineer James Wickert, gave his professional opinion that, even had the discharge piping been terminated above a floor drain rather than above the bare floor, dangerous splattering of hot solution would have endangered anyone in the vicinity in the event of a rupture disk split. He opined that a splash guard would have reduced this risk. After the discharge began that injured Tackett and Chenoweth, the testimony of both established that there was an interval during which the solution was solely discharging down through the discharge pipe as intended, rebounding from the floor, and splattering and burning both men. After this short interval, the duration of which cannot be established with certainty, the discharge pipe failed and separated at its junction with the rupture disk allowing hot solution to spray from above. While it can be inferred that it is this last portion of the accident that caused the worst of Tackett's and Chenoweth's injuries, the initial phase was also responsible for some burns. There is, therefore, a genuine issue of material fact, based upon appellants' expert testimony, as to whether a splash guard at the base of the discharge piping would have prevented some of the harm.
 {¶ 29} With respect to the alleged defective specification of CPVC piping that was inadequate to withstand the heat of discharge, any error in this respect could not have been the proximate cause of Tackett's and Chenoweth's injuries since the discharge piping was ultimately installed using non-specified PVC pipe. Appellants' expert testified that CPVC would have had a somewhat higher temperature rating than PVC, but would have also been inadequate for the job. However, since the specified material was not installed, any deficiency in that material was not the proximate cause of Tackett's and Chenoweth's injuries.
 {¶ 30} Turning to the manual notice that the flange, discharge piping, and supports were to be installed under the supervision of Gas Energy, Gas Energy argues only on appeal that, if Gas Energy did not participate in the installation of the discharge piping, appellants have presented no evidence to support the possibility that this failure to supervise was the proximate cause of their injuries. To the contrary, appellants have presented evidence that: (1) the incorrect grade of plastic piping was used for the discharge pipe, and (2) the discharge pipe was installed over a bare floor, rather than a floor drain. In addition, Tackett's testimony was that the pipe failed at a weld where it joined with the rupture disk housing. In light of the clear notation in Gas Energy's own manual that the discharge piping would be installed under Gas Energy's supervision, the possible absence of supervision, and the failure for multiple reasons of the discharge pipe system, we find that a genuine issue of material fact exists as to Gas Energy's negligence and liability as a supplier under R.C. 2307.78.
 {¶ 31} Because a genuine issue of material fact remains with respect to Gas Energy's liability, appellants' third assignment of error has merit and is sustained.
 {¶ 32} In accordance with the foregoing, appellants' first and second assignments of error are overruled, and their third assignment of error is sustained. The judgments of the Franklin County Court of Common Pleas granting summary judgment for Limbach and Schooley Caldwell are affirmed, and the judgment of the court granting summary judgment for Gas Energy is reversed. This matter is remanded to the trial court for further proceedings in accordance with law and this opinion.
Judgments affirmed in part, reversed in part and causeremanded.
Bryant and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.